Good morning, your honors, and may it please the court, Rachel Weirich. Weirich, I'm sorry. You may proceed. Thank you, your honor. Rachel Weirich for appellants. May I please reserve three minutes for rebuttal. This case is about concerned parents and community members who went to their elected school boards to criticize the board's handling of a specific security incident and were silenced for reasons the board itself cannot consistently explain. To make matters worse, the policy they now use to justify their actions is unconstitutionally vague. The district court got this case wrong in two fundamental ways. First, it ignored our unrebutted evidence of post-talk rationalizations and unequal treatment. What is the constitutional issue you are proceeding on? You mentioned the vagueness part. Are we dealing with the void for vagueness or are we dealing with the as-applied viewpoint discrimination? Both, your honor. So which one? They have different analysis, so which one are you approaching? Yes, your honor. Sorry, I was doing a brief summary of both of them to explain how the district court Go specifically to the one that you think is a problem. Your honor, both are problems, and we can start with as-applied if you'd like to discuss that. In this instance, the Supreme Court has said over and over again that the government may not regulate speech based on the message that it conveys. And here, that's exactly what happened. The plaintiffs, our parents, wanted to criticize a school board about its handling of a specific security incident involving a student that had been reported on in the news. And the school board shut them down as soon as they started saying The issue was the naming of the student, wasn't it? Your honor, there was no naming of the student. That was the reason that the school board gave. They claimed that these parents were sharing information that could be used to identify the student or disclosing PII, but that's not actually true. And even the board admits on page 9 of their brief that they shut down one of these parents for saying the word him, which certainly cannot be used to identify anyone. So the question here, you've got this policy. You do agree it is facially constitutional? We are not pursuing a challenge to it facially, your honor. The policy is good, and this policy says, Okay, you can come to this school board, limited First Amendment type rights in a limited type situation, understood. And you can talk, but you can't criticize or attack individual students. That's not permitted. And so you had five speakers, two talk, and they kind of do it a little. And the third one stepped a bit more so into criticizing a student that didn't name the student, but there's only one person you're talking about here and was going in the direction of doing that, and that's when the school board chairman, Ms. Mansfield, didn't stop it. And you say that violated the Constitution because it violated it as applied viewpoint discrimination. It was as applied viewpoint discrimination. Yes, your honor. We're not contesting that the school board can place reasonable limits on the use of the school board forum, but when they do, they have to be applied equally. And we feel strongly that these parents did not criticize, target, or attack this student under any common understanding of the terms. So what if I appreciate that argument. I think your claim is that, number one, it's not identifying information, and, number two, you're really criticizing the school board and not the student. What if we were to feel hypothetically disagree with that, that while you may be aimed mostly at the school board, there's inherent criticism attacking, or I forget the other word. Targeting. Targeting this particular student. And given the context, everyone knows who it is. Do you have to win on those two issues, on the as applied challenge, that it was not targeting and that it did not identify the student? No, your honor. I believe we could win on either one. We did not target, criticize, or attack this student. He was not the object of these parents' remarks. There was no ad hominem attack. This court in Steinberg discussed a personal attack. And described it as insults directed at or to an individual. And said that sometimes it can elicit a responsive discourse or a counterattack. That wasn't an issue here because they weren't directing their comments to a student. It would have been. And they didn't, I don't think, at least October 8th, say anything, say that you were. No, your honor. That's exactly the point. Throughout these remarks that these parents made, the school board interrupted them for commenting on a student or discussing a student in a way that disclosed or could disclose confidential information or disclosed PAI. And even based on the school board's own standard of what that is, they did not come close to disclosing any identifiable information under the school board's standard. But I think in your argument that I know you disagree that it discloses personal information. But maybe I misunderstood things. But I thought your argument was they said at the meeting you're disclosing information. And then they have a release the next day. And it talks again about disclosing information. And it talks about misinformation. And then they don't decide that this targeting, criticizing reason that is in the policy isn't mentioned until October 22nd. Is that right? That's accurate. And even when they mention on October 22nd, they don't necessarily say that that's the reason they silenced these parents. They don't assert that until this litigation began. And, you know, the comments that they made at the school board meeting about that. Well, I hear you there. But they're using the reason. They're talking about the prior incident. I mean, that seems a tad picky. To say in October when they cite that, that they're not referring to it. Well, they also mention a number of other policies at the same time. Sure. You couldn't have multiple reasons. You'd have the same argument, right, that if you came up with them on your third try, there's an indication under the law that that might be indicative of discrimination. Yes. All right. Yes, absolutely. I mean, they gave some reasons at the start, which don't make sense in light of the fact. The district court didn't mention the shifting explanations. It did not. Is it wrong? I mean, don't we have law that says a district court doesn't have to mention every reason? Yes, Your Honor, that's true. This district court, I know you disagree with some of the decisions, but it seems pretty engaged. It's listening to the arguments. It's responding. So I'm trying to. . . I appreciate your argument that you have this shifting explanations, and I understand your concern that it wasn't raised. Why does he have to raise it? Why don't we assume that an engaged district judge who rules against you hasn't considered it and rejected it? Your Honor, he said in his order, or at least he said on the record at the time he issued his order from the bench, his ruling from the bench, that the record had no evidence of comments that were specific to individual students. That's right. That may have been wrong because there was record of comments to individual students, and you pointed to those. But if the reason is targeting and attacking, I don't think there was any other evidence that was targeting and attacking, save for those that the school board says were no longer students or something like that. Sure, Your Honor, but the district court established at the proper level of comparator here was not targeting, attacking, or criticizing. It was commenting or discussing a student, and that's in part because that's what defendants said. He said that, but to be fair to him, he also said identifying information, and I think he says and violating the policy. Now, the policy includes this targeting stuff, so why don't we give him credit that he's got it on two grounds, one that you were providing identifying information, and if that were the only thing, then you might have a pretty good argument because you got other examples of that. But he then says and violating the policy, which the policy talks about the targeting. Why don't we give him the credit for invoking that issue, which leaves you with a shifting explanations argument. Your Honor, I think we presented evidence that we did not identify this student, and as for the targeting, even if it is either or, and he doesn't have to say all of his reasons, but the fact of the matter is that we did not target this student. He construed it to be that way, but that's why we also have our vagueness claim, is that under our common understanding of these terms, what these parents said don't constitute targeting, attacking, or criticizing. The terms are not defined. There's no guidance in the policy that provides meaning for what these terms are supposed to cover and what speech is actually prohibited by the policy. So let me ask you about that. I think the district court didn't really go into that. He just says I'm bound by Steinberg and Davison, which don't mention vagueness anywhere. So I appreciate your argument there. I've got a different question, though. I understand your argument that they're vague. This is not really about this case, but I just want to understand the principle. Assume you've got a challenge to a vague statute that violates the 14th Amendment because it's unconstitutionally vague as applied, but under any definition, a particular plaintiff who's challenging it would fall within the meaning. You understand what I'm saying? So let's assume, I think, attack, criticize. I can only get two of them. Let's assume those are vague terms, but however vague they are, your client's conduct, it applies here. I know you deny that, but assume it is. As a matter of law, can you bring a case if something is vague but is applied to you as unquestionably within those words? Your Honor, there is the clearly prescribed doctrine that says, as applied to the facts of the case at issue, if the speaker or the person has engaged in that conduct that's clearly prescribed, then, no, they're barred from bringing a facial challenge or a vagueness challenge on behalf of other people. I think they could still probably bring it on behalf of themselves, though I think that they would probably be barred. So we have to agree that it's vague as to you for you to be able to. Yes, Your Honor. You can see that? Holder's a great example of this. The terms at issue there in the material support statute were training and personnel, and both of those terms were defined, first of all, and none of the terms at issue in this policy are defined. But the plaintiffs in that case actually used the terms of the statute to describe their proposed activity, whereas here we're saying absolutely not. The terms at issue in this policy rely on the subjective judgment of the person tasked with enforcing them. And the definition of target, attack, or criticize, some of them refer to the other term for their definition. It's circular, and it's incredibly unhelpful for a person who is trying to figure out what this policy actually prohibits. It does not give fair notice to an ordinary person so that they can comport themselves accordingly. And the chairman's enforcement of this policy makes it even worse. She has sworn now in a declaration that the only reason she silenced these parents is because they targeted, criticized, and attacked a student. But that's not what they said previously. And so if we're to say that that's the only reason, does that mean that that policy also encompasses commenting on or mere reference to an unidentified student? That surely demonstrates its vagueness. And the lack of clear guidelines or explicit standards does not meet First Amendment criteria here for this case. So you're correct, Your Honor. I think that it would be prescribed if our parents engaged in it, but we disagree wholeheartedly that they did. They really were focusing their comments on the school board. And like in Steinberg, this court had a discussion about the fact that personal attacks are usually irrelevant. Do you know what that red light means? Oh, I'm sorry, Your Honor. I'm so sorry. I thought it was going close to it. I apologize. Go ahead and take 30 seconds to wrap up. Thank you, Your Honor. All I was going to say is that this court has said that personal attacks are often irrelevant and that somebody can convey a message maybe even more effectively without it. In this instance, there is no way these parents could have conveyed their message and their concern about the board's handling of this incident without discussing the incident. And the only reason the school board shut them down is because they did not like their message. They thought it was untrue and political. Thank you, Your Honor. Wait a minute. Is the amicus next? Mr. Eberstadt? That's right, Your Honor. Good to have you with us. Thank you very much. It's good to be here. May it please the court, I am Rick Eberstadt on behalf of the Commonwealth of Virginia as amicus. The Commonwealth has a strong interest in protecting Virginians' free speech rights and in making sure that school boards cannot unconstitutionally silence concerned parents. So in this case, we would ask this court to rule for the parents on their free speech claim for three reasons, all of which we believe show that the school board's actions were a pretext for unconstitutional viewpoint discrimination here. I think the Commonwealth has sort of a mixed interest here. You've got your citizens, but you do want your school boards to be able to conduct it in an orderly way. Your Honor, we do want school boards to be able to conduct meetings in an orderly way, but we also want our citizens' free speech rights to be protected, and we genuinely do not think that that was what happened here. And there are three reasons that we think that's the case. So is it a speech under constitutional violations as applied that you're addressing, or is it a vagueness? Yes, Your Honor, it is the as applied that I'm addressing, and that is our amicus brief here is about the as applied challenge, that we believe that the school board's rules as applied to these parents were applied in an unconstitutional way. The first thing I'd like to point the court to, there are three reasons. The first is that the board directly admitted that they shut down the parents' speech based on viewpoint in their statement the day after the meeting. The second is that the board's justifications for shutting down the parents' speech has shifted repeatedly over the day after and over the course of litigation. And third, because the board's own stated reasons for shutting down the meeting do not stand up to examination as having been applied even-handedly. Now, to turn to the first point, the day after the school board meeting, the board released a statement on safety, student privacy, and misinformation. In that statement, the board said, in explaining why they shut down the meeting and why they shut down the parents' free speech, they explained that it would have been, this is their words, irresponsible if they were to, quote, allow. What is the viewpoint that's being discriminated against? The viewpoint that's being discriminated against is the school board does not seem to like being criticized over and on this particular. But it was allowed to criticize the school board. Yes, Your Honor, but it does not seem to like being criticized on this particular issue based on these particular news articles. The district court concluded that after the hearing said the evidence is clear, that is only when the plaintiff's veered into targeting to a specific student that they were interrupted. And it said the same thing in the written opinion. Is that clear error? Your Honor, I do think that it is clear error because the school, the district court did not seem to take into account, and regardless of whether it took it into account or not, the accumulated evidence shows otherwise, the specific statement afterward that the school board issued, saying that the reason it had to shut down the meeting was because misinformation was being spread in the meeting, information that they go through in some detail against what they disagree about in the news articles that the parents were citing. They referred to the news articles as having been without full context or knowledge of LCPS's response. They say that local media may share inaccurate or incomplete information and that when that happens it would be irresponsible for the school board to allow this information to spread in this public forum. So what we have here, when you're looking at the shifting explanations that Judge Qualibon alluded to, you have non-lawyers in a limited type situation with the school board, and they are articulating certain things. They say misinformation and the kinds of things that are listed here within this policy here. Do we hold them that you didn't specifically say under the school board policy 2528.3 it is required, da, da, da? I mean, the district court has made the determination that it was only when they veered in criticizing a student, a specific student, that they were then interrupted. Your Honor, when the school board admittedly, they are not lawyers, nor do they need to be. But though they are not lawyers, they ought to know their own rules. Are those school board members paid, or are they just volunteers? Your Honor, I don't know. Whether they are paid or are volunteers, they are a government entity, and they ought to know their own rules if they are silencing. They pretty much get no money. Even if they do, it's not on the end of school board. Those little small errors get much money. So these are people out here, just regular citizens. They allowed the first two to speak, and what's going on, and as the district court says, it then veers into a specific student, and they were trying to move it away from this. If you want to talk about a specific student, then you meet us later on when we talk about administrators and stuff on it. Apparently, it's clear, at least I understand, the policy is not vague on its face, that it is facially constitutional, I should say. The chairman of the board is trying to keep peace in the meeting. It's obvious that the individuals there are upset. They're upset because of a specific student, which makes it difficult now. I will say that. How do you not talk about that specific student? But to do so would violate the policy. So apparently, the people speaking realize this, and they don't call out the name, but they're calling out the student. Everybody knows who the student is. So we get into this. We end up in the Fourth Circuit, and we argue that you want to have a right to say these things because it's a viewpoint you want to say, but your viewpoint is to criticize the board, but you were allowed to criticize the board, right? If you were allowed to criticize the board, it's a question of fact, I guess, as to whether that veered into criticizing or targeting a specific student. The district court found that it did, and then put it in a written statement, and our review is clear error. Your Honor, I see that my time has expired. May I answer a question? You go ahead and finish. If you perceive that as a question, you answer it. Yes, Your Honor, I did. What do you think about what I just said? You're getting a lot of that today. I didn't invent it. Your Honor, I think that paid or not, I think that the school board unconstitutionally violated these parents' constitutional rights for three reasons, and one, the first one that I point the court to in response to that is in their own statement the next day, talking about misinformation, talking about they had to shut down this meeting because of unverified information spreading in it. They are entitled to their opinion on what is true and what is not, but the First Amendment does not. The speakers are entitled to their opinions? The speakers are. There are entitled to their opinions, and the school board, I don't know whether they're paid or not in Lyland County, Virginia, but where I grew up and was around them, they weren't paid, and I admired the service they did. I was actually a schoolteacher one time for a while, and they weren't partly paid either, and I admired all of them I worked with. So I just state that for the record. But, Your Honor, they are not allowed to shut down parents' views based on a disagreement of opinion. But they're obligated to protect these students. That's what all of you should be doing. Yes, Your Honor. May I answer that? May I continue to answer? You're out of time. I'm sorry, Your Honor. I gave you extra time. In fact, I gave you five minutes for the Attorney General to come in here and criticize the board. Thank you very much. Thank you. Mr. Bardot, Ms. Bardot, I'm sorry. Either way, thank you. Ms. Bardot, good to have you. Good afternoon. Good to be here. Thank you. May it please the Court, my name is Heather Bardot, and I represent the Appalese-Dulabin County School Board and Melinda Mansfield, its chair. I'd like to just get right to this as-applied challenge because I think it's important for this court to focus on what was actually before the district court rather than to be drawn into the arguments, which I suggest are new on appeal. On appeal, the appellant suggests that the school board engaged in viewpoint discrimination because the school board allowed other speakers to make, quote, reference to individual students while not allowing them to do the same. But referencing a student is not what caused the school board to interrupt appellant's speech. As the district court noted in its order, which is at JA-427, and I will quote, the evidence is clear that plaintiffs were interrupted only after their comments targeted a specific student in direct violation of policy 2520A3. And the district court properly held that the appellants failed to identify a single other situation in which a speaker had targeted an individual student and been allowed to carry on. So counsel, on that point, you're referring to the order itself, not the description of the ruling at the hearing. Right. Because at the hearing, the district court never said that. At the hearing, the district court said the record shows there's really no evidence of prior student-specific comments that were allowed or not interrupted by the board. And there plainly were examples where that has occurred. Correct. But you have to read the district's court. Erica, I hear you. So you go to the order, and your point would be, I think, that the other examples that were cited of identifying information were not criticisms or targeting. Well, two things. Some of the other examples weren't even of current students, and of course the policy talks about students. It said zero evidence. That seems, what he said at the hearing, I respect. Look, he's doing things quick. I mean, I'm not trying to nitpick. But just as a matter of fact, that isn't correct. It is correct, because you have to read that comment by Judge Nachmanoff in context of the entire colloquy that occurred during that hearing. And so when he said that, he had already talked to counsel for appellants about, well, wait a minute, you're saying that they're not targeting or criticizing this student. But let me ask you this, Ms. Warick. If you were the parent and they were saying that this kid had gang affiliations and all these other things and had been arrested and so forth, basically, can you tell me in what world as a parent you wouldn't have felt that they were targeted? So this is the conversation that then leads to his comments later. So I don't think you can cherry-pick that piece of his comment out of the whole colloquy and say that he wasn't considering those comments to have been targeting. Did he say that in that specific phrase that has been pulled out and relied upon by Ms. Warick? Certainly not. Well, does it really matter, I mean, if the written order says targeting? I mean, you read from the written order. Yes, Your Honor. I mean, obviously that was his finding. And he indicated in his opinion, short though it may have been, that he looked at everything. He looked at the video. He considered all of the evidence. And it was clear from the evidence that he viewed and that the court has before it that these persons were not interrupted until they targeted the student. And I would submit that when you look at the actual video, that's accurate because you look, for instance, at Ms. Miller. 22817 is where her comments start. She comes in thrashing. She accuses the school board of betraying the trust of students and parents. She says they don't have their best interest at heart. She says they engage in unscrupulous cover-up, that they bury their heads in the sand, that they're heartless and they're soulless and they're not taking care for the safety of children. I mean, she's saying about as nasty things, well, there have been nastier, but nasty things about the school board. And they don't interrupt her. They say, fine, you want to bash at us about the way we handle safety issues? Bash away. They sit in silence. And it is only when she then goes into talking about the reassignment of the specific student, and she says, how many ticking time bombs are there like this? A student who poses a significant, you know. So do you, if I, as I read your briefs, her brief, I recall, I think, and correct me if I'm wrong, that you, the board deems it okay if this incident were talked about without saying he or something like that? If there was a criticism that the school board is inappropriately reassigning gang members who carry guns, that would be okay? Not only was it okay, it happened here without being interrupted. If you look at Ms. Michon's comments that start at 237.04, she's interrupted when she starts talking about the specific student carrying a concealed weapon walking to school. She's interrupted and then allowed to continue. And she redirects her comments in an inappropriate way. And she talks about her concern with safety policies. That's an important part of the case, as you indicated. And the district court made that finding, that it was when the plaintiffs veered into targeting a specific student. You gave the information that sort of supported the fact that they were allowed to criticize the board. But be more specific. Be more specific. Where is it, what is the language in which they veered into targeting a specific student? Right. So in the context of this case, where you can see in the record that there's been a recent news report, it's part of the record, where the student has been identified as a Loudoun County student with gang affiliation who was carrying a weapon, arrested on the way to school. What was the specific language that was being said? Sure. What were the statements? We got the record. We knew what the record said. Yes, sir. So for Ms. Miller, she said, how many ticking time bombs, this may be a bit of a paraphrase, but it's pretty close, how many ticking time bombs are there, like the reassignment of yet another student who poses a safety threat to this school? A student with violent gang affiliations who was arrested, you know, on the way to school. This is veering into that very news article that was before. Everybody in the jurisdiction knew about. The school board chair certainly knew who this was talking about. It had been well reported. We had a lot of people there to speak on issues related to this student. And so that's the point at which, when it identified that specific student with alleged gang affiliations. It gets fuzzy because you do want parents to talk about gang violence when you allow things like that to happen. But the policy does prohibit you from dealing with a specific student. And I think the out that seems to be allowed here is you can talk about it, but we're not going to do it in this limited public forum. You can go to the officials, and you can be specific about, I guess, about any student you want to be there.  But it's – and that's the difficulty we're running into now. I don't know the word politics doesn't come up, but there's always the politics of meetings and people want to make certain statements and you're really making them not – you're interested in it, but you're really trying to get an audience for it too. And the interest of the board to limit how this board is going to be used as a vehicle against a student or a person there. The parent has a concern, but also the public has a concern of it. How do you keep that? And at the end of the day, it comes down to a court determination. Did that happen? And when the district court makes a specific statement and says that's when it – when it veered into that, they were interrupted. But you could criticize the board. You veered it, you could do it. So then I'm asking a question. Is that your position in terms of how this is coming down? But you do recognize the difficulty that we are put in as well as courts and parents. And maybe if you had the more specific statement, we got a policy here that says this, that, da, da, da. I guess that would have made it clearer. And you are – we think you are violating that policy. Would you not do that? And that's hindsight, but it's also to be informative on the next time this comes up for school boards and others that, you know, give the policy, state it up front. And then it may be a debate as to whether you're going back or forth, but it seems to me on a clearer sort of situation is you now have given them notice, don't do that. We don't mind you criticizing us, but don't bring up specific students or specific acts that identifies a student. Right, and you have to remember that at the beginning of the public comment session, as you can see on the video, that Ms. Mansfield, the chair of the board, went over the policy and when she talked about the particular provision and about not talking about individual students, and if you had a concern with any individual student that you had these other means to bring them to the attention of the board, what she's reading from is exactly this policy, which is 2520A, the section that says speaker comments that target, criticize, or attack individual students are not permitted during public meetings. Speakers should communicate these concerns privately to the school principal or an appropriate school official. This was a regular public meeting of the board. It wasn't one for that specific purpose, was it? No, but at a regular public meeting, every single public meeting that the Loudoun County School Board has, at least as of now, they have had public comment session. At the beginning of every public comment session, they go over 2520 policy. It's not only... Required to do that? They're not required to do that, but they do that as a matter of course to remind people of their obligations to be civil, to have decorum. They open the meeting with the public comment session? They don't open it. This was done about two hours into the meeting. It's done on the agenda where it fits. It's on the agenda, all right. Yes, sir. Once you open it, you give people a chance to comment. You do have this obligation to allow them to speak and speak freely. That is definitely there. With limitation, right? Because it's a limited public forum. That's the issue that we're confronting here. However this thing comes out, it needs to be clear. You don't have to do it, but if you do it, you've opened it up. And you've got to give people a chance to speak. But I say, well, I think the better way, because I think one of the important things is to give guidance on how these things are, because these are non-lawyers. They didn't have you there. If they had you there, they wouldn't have had this problem. If they had the other side, they wouldn't have had this problem. Well, maybe you were. I don't know. I was not. So I think at the end of the day, we've got to parse out, well, when is it that it veers into a policy, but you didn't state it specifically there. So how do we deal with that? But what I'm saying to you is I think they don't have to state it precisely. They don't have to cite it by line and verse. She has said at the beginning of the public comment session, this is our policy. And not only did she say at the beginning it's part of the agenda, but she said it at the beginning. You can view it in the tape recording. She goes through this policy. She talks about this particular provision, which doesn't allow you to talk about individual students. Well, what provision of the policy says you can't talk about individual students? It says you can't criticize, attack, or target. Well, that, yeah. Yes. There's no provision that says you simply can't mention a student. So I didn't mean to suggest that, Your Honor. Agree. But it was not until October 22 that the school board moved from identifying students to targeting students. Now, I get the point. They're not lawyers. I understand your issue. That may be not enough. But it's accurate, I think, to say that the school board's comments were not about targeting. They were about identifying. They said that over and over until you got to the next meeting. I'm not going to argue a point that is not arguable. I mean, obviously that's not the word she used. Is it regrettable? Would she wish she had used those words? Sure. But I think in the context of her having gone over this section, which does talk about speakers should communicate concerns about where it says speaker comments that target, criticize, or attack individual students are not permitted, communicate these concerns to. What about. I'm sorry. Go ahead and finish. No. Communicate these concerns to the principal. And then when she interrupts them and says, you're not going to talk about these individuals. I don't think it's. I think it's disingenuous to claim that nobody knew that's what she was talking about, which is what I hear now. Because I will tell you. Then the next day where they're not in the heat of the moment, they're going to the prop, the formality of a written statement. Right. So this is a little different there. The pressure, the time pressure or whatever it is, is not the same. And they've written it out. People probably reviewed it. And not once do you say target, criticize, or attack. You say, identify all information then. And you add misinformation. Right. Then you get to, you know, what, 12, 13 days later, they have another meeting and they identify the targeting policy. And I understand your point on that. The difficulty, though, is, or maybe you can help me with this. Is it your position that the extent of targeting, criticizing, attacking those that took place on October 8th was materially different than what took place on January 30th, 2024, when they had the complaints about the sexual, you know, misconduct or sexual assault? I think. You're talking about the prior student. Yes. Yeah. The policy would have applied. Ms. Mansfield would have had no ability to tell somebody not to talk about somebody who is no longer a student. So the January 30th, 24th was a prior student. That's a prior student. And you can see it in the affidavit of, or the declaration of Ms. Mansfield that we submitted in the district court. She would have loved to interrupt that conversation. But she didn't because the policy wouldn't permit it. I thought your brief was that that didn't target an individual student. I thought your position in your brief about the January 30th, 24th was that it didn't target. And so my question, and maybe there's an additional reason that it's not a student. Yeah, Your Honor, my belief and understanding and recollection, I know I'm accurate in my understanding of that because I know which student that was. I'm very familiar with that incident. That person was no longer a student. If you look at the declaration filed by Ms. Mansfield, the reason she did not interrupt that statement was because that person is no longer a student. And I thought that was the position with the folks who, where there was discussion about the students who wore stoles wearing the Palestinian flag, that that was a graduation. They weren't students. Those were no longer students either, nor did it target them or target or attack those students. So that was the position with respect to that. Okay. So you think that the discussion of that is not targeting students? No. We do not believe that was targeting students. That was targeting the school board member for failing to shake the hands of those people who were no longer students. Okay. And so the January 30th incident didn't involve a current student? It did not, Your Honor. Okay. I appreciate you clearing that up. And I just, while I have some time, I do want to address this media release because I think there's been a lack of faithfulness to the text of that when it's been referred to by the Commonwealth and by the appellants. I think they take out of the text of that what they think is helpful to their position without actually being faithful to the full text of it. Because what it says, in part at least, the part they don't pay any attention to, is that the October 8, 2024 meeting of the Loudoun County School Board, a number of individuals sought to discuss what was reported in the media and discuss a specific student despite repeated requests. Is that part of the trial judge's findings in his hearing? He did not look to that, right? I'm looking at our review. We can look at media release. We can listen to what people talk about. Our review is a clear error. I don't disagree with you. Even with that, I mean, we can go round and round. It's not a political forum where we're going to try to work it out one way or the other, what the media is saying and what not. We're not trying to decide that. We're deciding a constitutional issue here. I don't disagree with you. We're going to limit ourselves to do that. I was just trying to answer Judge Quattlebaum's question about the release. I understand. Because, Judge Quattlebaum, is there something further you want to talk about on media? I don't want to— No, no. You sidetracked me. I didn't want to interrupt you. I didn't perceive it to be that way. But I do have a question with regard to the shifting explanation. Yes, sir. Because you allude to the fact that just before the public comment period commenced, that Chairman Mansfield did specifically allude to that policy and say not to target, criticize, or attack individuals. Is that true? She alluded to the policy and said that they should not talk about individual students. She did not during that session. She clearly was alluding to the policy because she was talking about that, the civility and decorum, reminding them to comply with the public policy comment sections. She did not in that statement use the words target, criticize, or attack. That statement is which one? October 9th? October 8th preceding the actual— But the statement was October 9th. And the meeting was October 8th. October 8th. The statement you're talking about is the beginning of the October 8th meeting. There was a subsequent written statement on the 9th. Yes, Your Honor. You referred to that statement, and I just wanted to make sure we knew what I knew what that statement was. Very well. I never got to the void for vagueness piece. I see my time is over. I'll answer any questions you may have. Otherwise, I'll rely on my pleadings.  Thank you very much. Thank you. Thank you, Your Honors. Just briefly, first to clarify, there, and as counsel just noted, there is no policy against commenting or referring on an unidentified student, and there is no evidence in the record that this student was identified during— in the news articles or at the school board meeting. He is currently unidentified. In relation to that, the identification is very important here. Even if you find that the plaintiffs, the speakers, targeted, criticized, or attacked a student, it has to be somebody that was identified. That's what the school board has said. And under their own standard, which we discuss in footnote three of our brief, there is no way anything they said could have allowed anyone without— circumstances to identify this individual with reasonable certainty, and that's what their policy requires. So there's just no way that anybody identified this student. I think a lot of this discussion, though, is even being had because of how vague this policy is. There is no definition about what target, criticize, and attacks means. There is no standard for the chairwoman's application of this. You can see from her interpretation of it that it does not comport with common understanding of what target, criticize, and attack may mean. Even in their current brief before this court on page 38, they say that plaintiffs were interrupted when and because they commented on an individual student. If this policy against targeting, criticizing, and attacking— It says individual students, not identifiable students. That's correct, Your Honor. But since the beginning, the school board has said that they were interrupting our plaintiffs and causing them to move on because they were identifying a student and disclosing PII. But you're absolutely right. To the extent that it says individual student, what the school board means, is identifiable, it should say that. Because what constitutes restricted speech under this policy is left to the subjective view of the chair, it invites arbitrary enforcement. And we can see that in a number of the examples that we've given. And I'd like to speak just briefly to the distinction between former students and current students. In these examples, all the instances and all the comparator evidence that we provided happened when these students were students at an LCPS school. And surely the school still has an obligation to maintain confidentiality about those students. So is it your position that January 30, 2024 meeting involved a student who was a current student? A student at the time. He was no longer a student at the time the speaker discussed it, but he was when the incident occurred. And surely it's not the case that as soon as a student leaves the system or walks out the door that the obligation to maintain confidentiality about that student dissipates. And if this is really about, may I just finish my point very briefly, Your Honor? If this is really about, if this is not about privacy and instead about disruption, it's unclear how allowing remarks about former students is any less disruptive than allowing remarks about current students. Thank you, Your Honor. We'd ask that you enter a preliminary objection. Thank you. We appreciate each of your presentations. We'll take the case under advisement. And with that, Madam Clerk, we'll adjourn for the day.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.